**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| STACI MAGEE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-05-3008 |
| CARLOS M. GUTIERREZ, | * | |
| SECRETARY OF THE UNITED STATES | | |
| DEPARTMENT OF COMMERCE, | * | |
| Defendant. | * | |

\* \* \* \* \*

**MEMORANDUM OPINION**

This action was brought by Staci Magee ("Magee" or "Plaintiff") against Carlos Gutierrez, acting in his official capacity as Secretary of the United States Department of Commerce (the "Agency" or "Defendant"). Currently pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [6]. The Court has reviewed the entire record, as well as the Pleadings with respect to the pending motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant Defendant's Motion for Summary Judgment.

**FACTUAL & PROCEDURAL BACKGROUND**

The following facts are taken in the light most favorable to Plaintiff. Magee began her employment with Defendant in United States Census Bureau on December 8, 1997, after receiving a term appointment to the position of Financial Assistant, GS-503-07. On her initial application for this position, Magee indicated that she was a veteran and claimed a 5-point veterans' preference and a 10-point preference for a compensable disability of less than 30 percent. On November 19, 2000,

1

Defendant converted her position to a career-conditional, competitive service appointment as an Administrative Assistant (Office Automation), GS-03303-07 in the Administrative Office of the Associate Director for Economic Programs.

The Department of Veteran Affairs (the "DVA") initially classified Magee as 20 percent disabled by her degenerative disc disease and an injury to her rotator cuff, which caused intermittent tendinitis. By March 19, 2002, the DVA had increased her overall combined disability rating to 60 percent compensability. In calculating Magee's disability rating, the DVA assigned a 10 percent disability to Magee's degenerative disc disease, a 20 percent disability to her rotator cuff injury, a 20 percent disability to her fibromyalgia, and a 10 percent disability to Calcaneal Exotosis in each foot. Magee applied to have her veterans' preference changed, as well as her status for a compensable disability, on October 22, 2003. Effective December 14, 2003, Defendant changed Magee's preference to 10 points and identified her as 30 percent compensable.

On October 6, 2004, Defendant solicited applications for a Financial Assistant position, GS-503-08, under Vacancy Announcement Number CEN-04-1317-RS (the "Announcement"). The Announcement specified that a successful applicant must have one year of experience as a Financial Assistant at the GS-7 grade level or at least one year equivalent work experience. Sometime before the closing date for the Announcement, Magee applied for the GS-503-08 position, under special hiring authority as over 30 percent disabled. In her application, Magee noted her service-related injuries.

Defendant's Human Resources Division for competitive referral determined that three applicants for the GS-503-08 position were "Best Qualified": Ramona Quivers ("Quivers"), Magee, and a third candidate. Magee was included as a non-competitive referral along with another

2

candidate.

After receiving the Human Resources Division's recommendations, a panel interviewed the three applicants referred competitively. This panel consisted of Donna Heiston ("Heiston"), Administrative Officer, Kathryn Walsh ("Walsh"), Administrative Officer, Vicki Farri ("Farri"), Administrative Officer, and Cheryl Kiatta ("Kiatta"), Administrative Officer.

During the interviews, the panel asked each interviewee twenty questions, fifteen of which were identical, and five of which varied by candidate. The panel members then scored each candidate's response on a scale of 1 to 10, with 10 representing the highest score. The panel members totaled each candidate's scores on all questions and forwarded their candidate point totals to Thea Scott, who computed an overall score for each of the three candidates.

Based on this system, Ramona Quivers received 711 points, Magee received 618 points, and the third candidate received 458 points from the interview panel. Ultimately, Quivers was selected for the vacant Financial Assistant position, and on November 16, 2004, Thea Scott announced Quivers' appointment to the position advertised in Vacancy Announcement Number CEN-04-1317-RS. It remains undisputed that Quivers is not disabled.

After seeking Equal Employment Opportunity ("EEO") counseling, Magee filed an EEO Complaint of employment discrimination against Defendant on February 8, 2005, asserting that Defendant did not select her for the Financial Assistant position because of her age and disability. In addition, Plaintiff claimed that Thea Scott had retaliated against her and harassed her. On March 3, 2005, the EEOC issued a letter that accepted for investigation Magee's disability and age discrimination complaints, but that dismissed her retaliation and harassment claims.

In support for her complaint, Plaintiff has alleged that certain members of the selection panel

3

were aware of her disability or perceived her as disabled. According to Plaintiff, Walsh stated that Magee's disabilities were "common knowledge ever since she joined [the] group, at least six years ago." Another member of the panel, Kiatta, has explained that she "understood [Magee's] disability to be caused by an accident while parachuting in the Armed Forces and that it causes her great pain." Farri denies any knowledge that Magee was classified as disabled, but acknowledged that she "knew [Magee] had aches and pains like all of us."

Based on this information, Magee filed suit in this Court on November 4, 2005, alleging Defendant violated her rights secured by the Vocational Rehabilitation Act of 1973, 29 U.S.C. §§ 794, 794a, as amended (the "Rehabilitation Act"). At the present time, it appears that Magee's EEO complaint has not been fully resolved.

On February 8, 2006, Defendant answered the Complaint by filing a Motion to Dismiss or, in the Alternative, for Summary Judgment. The instant motion is ripe for review, and the Court will now issue an Opinion.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction may be founded on either of two bases. As with a motion to dismiss under Rule 12(b)(6), a Rule 12(b)(1) motion to dismiss may challenge subject matter jurisdiction by demonstrating that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). With this type of 12(b)(1) motion, the "facts in the complaint are assumed to be true, and the plaintiff, in effect, is afforded the same procedural protection as [it] would receive under a Rule 12(b)(6) consideration." *Id.*

In the alternative, a Rule 12(b)(1) motion may assert a lack of subject matter jurisdiction "in

fact" apart from any pleading. *See id.* In such cases, a court may look beyond the allegations in the complaint to determine whether any evidence supports the exercise of jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Sharafeldin v. Maryland Dept. of Public Safety & Correctional Services,* 94 F. Supp. 2d 680, 684-85 (D. Md. 2000) (when a defendant challenges subject matter jurisdiction on a motion to dismiss, the court may consider evidence outside the pleadings without converting the motion to a motion for summary judgment).

Whether the defendant attacks jurisdiction under the former or latter theory, once the issue of subject matter jurisdiction has been raised, the plaintiff bears the burden of proving that subject matter jurisdiction exists in the federal courts. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

Defendant also seeks summary judgment on Plaintiff's claim. Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). Once the moving party discharges its burden by showing there is an absence of evidence to support the nonmoving party's case, *Catrett*, 477 U.S. at 325, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## **ANALYSIS**

As an initial matter, Defendant argues that this Court should dismiss Plaintiff's Complaint

for lack of subject matter jurisdiction on the basis of Plaintiff's failure to exhaust her administrative remedies as required by the Veterans Employment Opportunities Act of 1998, 5 U.S.C. § 3330a (2000) (the "VEOA").

Although Plaintiff's Complaint does not explicitly refer to the VEOA, Defendant reads Plaintiff's statement that her "rights were violated as a preference veteran with special hiring authority" as an invocation of the statute's protections. Responding to Defendant's motion, Plaintiff has clarified that she is not alleging a violation of the VEOA and only brings suit under the Rehabilitation Act. Because Plaintiff has not asserted a VEOA claim, she is not required to file a complaint with the Secretary of Labor, as provided in the VEOA. As such, this Court finds that it has subject matter jurisdiction over Plaintiff's suit.

**I.      The Rehabilitation Act**

In addition to seeking dismissal under the VEOA, Defendant also argues that it is entitled to summary judgment as a matter of law on Plaintiff's Rehabilitation Act claims.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his of her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

In a disability discrimination case, if a plaintiff presents a claim without direct evidence of discriminatory conduct, the case is subject to the *McDonnell Douglas* burden-shifting scheme. *See Ennis v. Nat'l Assoc. of Business & Educ. Radio,* 53 F.3d 55, 58 (4th Cir.1995) (holding that the proof framework established in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973) applies to claims of discrimination based on disabled status under the Rehabilitation Act). Proceeding under the

*McDonnell Douglas* burden-shifting scheme, a plaintiff bears the initial burden of establishing, by a preponderance of the evidence, a *prima facie* case of discrimination. *Ennis*, 53 F.3d at 58. Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* By producing a legitimate reason for the employment action, the defendant rebuts the plaintiff's *prima facie* case. To prevail, the plaintiff must demonstrate that the non-discriminatory reason is a mere pretext. *Id.* Throughout the case, however, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

A.      Plaintiff's *Prima Facie* Case of Discrimination

To state a *prima facie* case of discrimination under the Rehabilitation Act, Magee must show that: (1) she has a disability as defined by the statute; (2) she is otherwise qualified for the position in question; and (3) she was not selected for the position because of her disability. *Baird ex rel. Baird v. Rose,* 192 F.3d 462, 467 (4th Cir. 1999) (citing *Doe v. Univ. of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir. 1995)).

With respect to the first prong, by regulation, a plaintiff suing under the Rehabilitation Act must making the same showing as a plaintiff suing under the Americans with Disabilities Act of 1990. *See* 29 C.F.R. § 1614.203. Therefore, to establish that she has a disability as defined by the statute, Plaintiff must show that she either:

> **(i)** has a physical or mental impairment which substantially limits one or more of such person's major life activities;
> **(ii)** has a record of such an impairment; or
> **(iii)** is regarded as having such an impairment.

7

29 U.S.C. § 705(20)(B); *see also* 42 U.S.C. § 12102(2).

Plaintiff has alleged that her fibromyalgia and degenerative disc disease, as well as her other injuries render her unable to perform many of her daily activities. Specifically, in her affidavit, Plaintiff avers that she cannot sit or walk for long periods of time, that her back and neck periodically goes into spasms and, at those times, she cannot turn her head or hold it up, and that she walks with the assistance of a cane. Because of these problems, Plaintiff has stated that she has hired someone "to maintain [her] yard and pool as [she is] not able to keep up with [her] daily house chores" and that she needs a special chair at work. Pl's Aff. ¶ 5.

Based on Plaintiff's testimony, this Court does not agree that Plaintiff has a physical impairment that substantially limits one or more "major life activities" within the meaning of the Rehabilitation Act.[1] With respect to Plaintiff's difficulty walking, other courts considering the issue have held that moderate restrictions on a plaintiff's ability to walk does not constitute an impairment that limits a major life activity. *See, e.g.*, *Kelly v. Drexel University*, 94 F.3d 102, 108 (3d. Cir. 1996) (holding that a plaintiff suffering from post-traumatic degenerative joint disease who walked with a limp and could not walk long distances was not disabled within the meaning of the ADA); *Gallimore v. Newman Machine Co., Inc.*, 301 F. Supp. 2d 431, 447-48 (M.D.N.C. 2004) (finding that a plaintiff who walked with great difficulty and sometimes had to use a cane was not legally disabled under the ADA); *cf. Stewart v. Weast*, 228 F. Supp. 2d 660, 662 (D. Md. 2002) (noting that "an inability to walk long distances or climb stairs does not in itself substantially limit the person's

---

[1] Although Plaintiff has not offered medical records to substantiate her claims, such evidence is not required for a claim of disability under the Rehabilitation Act. *Cf. Gallimore v. Newman Machine Co., Inc.*, 301 F. Supp. 2d 431, 444 (M.D.N.C. 2004) (explaining "that certain long-term impairments would be obvious to a lay jury" and therefore not all plaintiffs need to present medical records to demonstrate existence of a disability).

ability to walk within the meaning of the ADA."); *but see Johnson v. Maryland,* 940 F. Supp. 873, 877 (D. Md.1996) (holding that a plaintiff who walked with a limp as a result of Charcot-Marie-Tooth disease had demonstrated a genuine issue of material fact that he was substantially limited in the major life activity of walking), *aff'd per curiam,* 113 F.3d 1232 (4th Cir. 1997). Plaintiff has stated that she can "hardly sit or walk for a *long* time." Pl.'s Aff. ¶ 5 (Emphasis added). This statement standing alone does not establish that Plaintiff's condition impairs major life activities within the meaning of the Rehabilitation Act.

Likewise, this Court remains unconvinced that Plaintiff's neck and back spasms affect a major life activity. Opposing Defendant's motion for summary judgment, Plaintiff has not presented any evidence aside from her one page affidavit, in which she does not state how often she experiences these spasms that "lock her neck." Furthermore, the Court cannot find a single case that holds that inability to maintain a yard or pool constitutes a major life activity. *See, e.g.*, *Moore v. J.B. Hunt Transport., Inc.*, 221 F.3d 944, 950-53 (7th Cir. 2000) (holding that the plaintiff did not have an actual disability even though he could not bowl, camp, restore cars, and mow the lawn because of his rheumatoid arthritis). For these reasons, this Court holds that Plaintiff does not have an actual impairment that limits one or more major life activities.

Even if Plaintiff cannot show that she has an "actual" disability within the meaning of the Rehabilitation Act, she may be considered disabled under the Act if she can demonstrate either a record of impairment or that Defendant perceived her as having a disability. In order to demonstrate that she was perceived as disabled, Plaintiff must show that: (1) Defendant "mistakenly believed that she has a physical impairment that substantially limits one or more major life activities," or (2) her employer "mistakenly believed that an actual, nonlimiting impairment substantially limits one or

more major life activities." *Rhoads v. FDIC*, 257 F.3d 373, 390 (4th Cir. 2001) (internal citations and quotations omitted). Viewing the evidence in the light most favorable to Plaintiff, the record reflects that at least certain members of the selection committee regarded Plaintiff as disabled. Walsh has testified, in an affidavit, that she "was aware of [Plaintiff's] age and disability at the time of non-selection. Her *disability* consisted of something about her feet, neck, [and] back. [Plaintiff] says she is also having trouble moving because of joint and neck pain from fibromyalgia." Walsh. Aff. (Emphasis added) Similarly, Kiatta stated that she "was aware of [Plaintiff's] disability" and explained that she understood that Plaintiff's disability was caused by a parachuting accident. Kiatta Aff. Although this evidence does not definitively establish that Plaintiff was regarded as disabled, at the very least these statements raise a genuine issue of material fact concerning whether Defendant mistakenly believed that Plaintiff's impairments substantially limited one or more major life activities.

Because Defendant may have regarded Plaintiff as having a disability and because Defendant has not disputed that Plaintiff was "otherwise qualified" for the position, this Court will proceed under the assumption that Plaintiff has made a *prima facie* showing of disability discrimination.

B.  The Agency's Non-Discriminatory Reason for Plaintiff's Non-Selection

As Plaintiff has made out a *prima facie* case of discrimination, under the *McDonnell Douglas* framework, Defendant must articulate a legitimate non-discriminatory reason for the action in question, and, to overcome Defendant's summary judgment motion, Plaintiff must show that this articulated reason is a pretext for discrimination.

In its brief, Defendant has stated that it did not select Plaintiff for the Financial Assistant position because Quivers received a higher cumulative score from the selection committee than

Plaintiff.  Of the four members of the selection panel, three ranked Magee lower than Quivers. Walsh stated that she ranked Quivers higher because Quivers "answered the questions better, elaborated better, explained her answers better, and was better prepared" during the interview. Walsh Aff.  Farri echoed this sentiment and stated that she ranked Quivers higher than Magee because Magee did not communicate the same level of budget formulation knowledge as Quivers. Farri Aff. 17.  The third member, Heiston, who gave Magee a lower rating than Quivers could not recall her reasons supporting her rankings. Heiston Aff.  Kiatta, one of Plaintiff's direct supervisors, was the only panel member to rank Magee higher than Quivers. *See* Kiatta Aff.

Magee attempts to demonstrate pretext by proffering evidence that two people involved in the selection process expressed concern about her use of leave.  First, Magee alleges that Thea Scott "openly voiced her concerns regarding Plaintiff's use of leave." Pl. Opp. at 14.  Plaintiff, however, does not attach an affidavit or other evidence as required by Rule 56 to support this statement.  *See* Fed. R. Civ. P. 56(e) (providing "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.");10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2722 (3d. 1998) (noting that  Rule 56 of the Federal Rules of Civil Procedure requires that a document "be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)" ).  It remains well-settled that this Court need not consider such unsworn statements on a motion for summary judgment.  *See Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment"); *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 443 (4th Cir. 1998) (explaining that unsworn statement of employees could not

be considered on motion for summary judgment); *Turner v. Human Genome Science, Inc.,* 292 F. Supp. 2d 738, 743 (D. Md. 2003) (refusing to consider unsworn statements as proof in a motion for summary judgment); *Metropolitan Life Ins. Co. v. Hall,* 9 F. Supp. 2d 560, 561 (D. Md. 1998) (explaining that "[u]nsworn pleadings do not satisfy Rule 56(e)'s requirements for summary judgment proof"). Even if this Court were to accept this allegation as true, Thea Scott's purported statements are not probative of pretext because Scott was not the relevant decision maker, but merely approved the panel's selection. *See Rowe v. Marley Co.*, 233 F.3d 825, 831 (4th Cir. 2000) (holding that inconsistency between the statements of two of the plaintiff's supervisors was not evidence of pretext where only one supervisor was the "true decision maker").

Plaintiff also cites the affidavit of Kiatta, in an effort to show pretext, in which Kiatta stated that she "recalled a conversation with Kathy Walsh that it would help [Plaintiff] advance in her career if she built her leave up." Kiatta Aff. Kiatta's account does not specify the details of the alleged conversation, does not give a date or time when the alleged conversation occurred, nor does it give a context for the discussion. In addition, Kiatta has stated that use of sick leave was not a criterion for selecting a candidate for the vacant Financial Assistant position, and Plaintiff has not presented any evidence that Walsh's opinion about Magee's leave had any bearing on the challenged decision. Moreover, that two other panel members also ranked Magee lower than Quivers undermines any argument that Walsh's score alone led to the non-selection of Plaintiff. Therefore, Plaintiff has not offered evidence sufficient to refute Defendant's legitimate non-discriminatory reason for not hiring Plaintiff for the GS-8 Financial Assistant position.

To avert summary judgment, Plaintiff asserts that she has not had adequate time for discovery, but has not attached a Rule 56(f) affidavit or indicated the discovery she seeks.

12

Under Rule 56(f), "summary judgment [may] be refused where the nonmoving party has not had the opportunity to discovery information that is essential to his opposition." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (quoting *Anderson*, 477 U.S. at 250 n.5). Rule 56(f) provides:

> **(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). The Fourth Circuit has strictly interpreted the requirements of Rule 56(f), emphasizing the need for a Rule 56 affidavit that "particularly specifies legitimate needs for further discovery" and identifies "which aspects of discovery required more time to complete." *Nguyen*, 44 F.3d at 242; *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245-46 (4th Cir. 2002). Indeed, the Fourth Circuit places "great weight on the Rule 56(f) affidavit" and, to that end, "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Evans*, 80 F.3d at 961 (quoting *Nguyen*, 44 F.3d at 242 (internal citations omitted)).

In her opposition, Plaintiff failed to describe with any particularity information that would preclude summary judgment in this case. Accordingly, this Court finds that summary judgment is not premature and will enter summary judgment in favor of Defendant.

## CONCLUSION

For all of the aforementioned reasons, the Court will grant Defendant's Motion for Summary Judgment. An Order consistent with this Opinion will follow.

Date: July 31, 2006

/s/
Alexander Williams, Jr.
United States District Court